UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| COLENE BALD EAGLE; SHAWN IMITATES DOG, Personal Representative for the Estate of THERESA IMITATES DOG-MARTINEZ; and AUDREY YELLOW HAIR, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIV. 16-5039-JLV <br><br> ORDER |

Plaintiffs in <u>Colene Bald Eagle v. United States</u>, CIV. 16-5039-JLV, Docket 1, <u>Shawn Imitates Dog v. United States</u>, CIV. 16-5040-JLV, Docket 1, and <u>Audrey Yellow Hair</u>, CIV. 16-5046-JLV, Docket 1, brought Federal Tort Claims Act ("FTCA") suits against the government arising out of the same motor vehicle collision which occurred on U.S. Highway 18 near mile marker 112 at its intersection with BIA Road 27, known as Wounded Knee Junction in rural Oglala Lakota County, South Dakota, on July 30, 2015.   In accord with Fed. R. Civ. P. 42(a)(2) the court consolidated the cases.[1]   (Docket 14).

The essence of plaintiffs' claims is that the vehicle in which they were traveling was stuck by a Oglala Sioux Tribe corrections transport vehicle being operated by Sophia Janis Blacksmith.   (Docket 1 ¶ 7).   Theresa Imitates

---

[1]All future references to the parties' pleadings will be to those documents filed in CIV. 16-5039 as the same pleadings were filed in the other cases prior to consolidation.

Dog-Martinez,[2] a passenger in Ms. Bald Eagle's vehicle, was killed as a result of the collision.   Id. ¶ 11.   Plaintiffs allege Ms. Blacksmith, an employee of the Oglala Sioux Tribe Police Department, "owed a duty of care to Plaintiff[s] to exercise ordinary care and awareness in the operation, management, maintenance and control of the Oglala Sioux Tribe Corrections transport vehicle."   Id. ¶ 15.   Plaintiffs allege Ms. Blacksmith was acting "negligently and carelessly [and] departed from the proper standard which caused the collision." Id. ¶ 16.   Plaintiffs allege the defendant and the Department of Interior, Bureau of Indian Affairs, acting through Ms. Blacksmith breached their duties to plaintiffs and "were negligent in several respects, including, but not limited to:

    (a)    Failing to keep a proper lookout for other vehicles;

    (b)    Failing to keep Defendant's vehicle under control;

    (c)    Failure to obey traffic laws; [and]

    (d)    Otherwise generally failing to operate the vehicle in a safe and prudent manner.

Id. ¶ 17.

    The government filed a motion to stay all proceedings in the case until "the related criminal charges pending against Sophia Janis Blacksmith—the government employee whose conduct is at issue in both the criminal case and

---

[2]Theresa Imitates Dog-Martinez and Theresa Martinez are the same individual.   CIV. 16-5040, Docket 11 at p. 1.   The court will identify her as Ms. Imitates Dog-Martinez throughout this order.

the above-referenced case—are resolved."[3]   (Docket 8 at p. 1).   Ms. Blacksmith

was indicted by a grand jury in the Western Division of the United States District

Court for the District of South Dakota in a case captioned United States v.

Sophia Janis, CR. 16-50018-JLV (D.S.D. 2016), for the offense of involuntary

manslaughter in violation of 18 U.S.C. §§ 1153 and 1112.[4]   (Docket 8-2).

The government seeks a stay of all proceeding in this civil case because

Ms. Blacksmith's attorney in the criminal case "has confirmed that, while

criminal charges are pending, she will not answer questions without the

presence of her counsel. . . . [and will] likely . . . plead the Fifth Amendment and

refuse to answer any questions about her driving or the events of July 30, 2015,

whether in a deposition, in response to written discovery, or even in an

investigative interview with the United States."   (Docket 8-1 at p. 2).

The government asserts the court "may, in the interest of justice, at its

discretion, stay a civil action until completion of parallel criminal proceedings."

Id. (referencing United States v. Kordel, 397 U.S. 1, 12 n.27 (1970)).   The

government contends that "the criminal proceeding against Blacksmith and the

current civil case are so intertwined that the United States cannot defend the

---

[3]The government's admission that Ms. Blacksmith is a government
employee is binding on the government for purposes of this case.   "[J]udicial
admissions are binding for the purpose of the case in which the admissions are
made . . . ."   State Farm Mutual Automobile Insurance Co. v. Worthington, 405
F.2d 683, 686 (8th Cir. 1968).

[4]Ms. Blacksmith and Ms. Janis are the same individual.   (Docket 8-1 at
p. 1).

3

civil suit until the criminal case is completed; the prejudice faced by the United States should a stay not be granted is significant."   Id. at pp. 2-3.   The government argues the burden on the plaintiffs by a stay is "slight" and they "will not be significantly harmed if this case is stayed the short time until the criminal matter is resolved."   Id. at p. 3.

Plaintiffs resist the government's motion.   (Docket 12).   Plaintiffs argue the government does not qualify as a "defendant" in the criminal proceedings. Id. at p. 5.   Plaintiffs contend it is disingenuous for the government to claim it cannot resolve liability in this FTCA action after the government obtained an indictment, based on evidence it presented to the grand jury, alleging Ms. Blacksmith was "grossly negligent."   Id. at p. 6 (referencing Docket 8-2). According to plaintiffs, indicting Ms. Blacksmith for involuntary manslaughter "speaks for itself in regard to liability."   Id. at p. 7.   Plaintiffs argue the only issues remaining are causation and damages suffered by each plaintiff.   Id. Plaintiffs assert that if a stay is granted, they will be prevented from obtaining discovery and preparing the case for trial.   Id. at p. 10.

In response, the government argues that "[d]efending Ms. Blacksmith's conduct in the civil case without her cooperation is, in fact, impossible to do effectively.   Additionally, this case involves more than just Ms. Blacksmith's conduct: there may be questions of contributory negligence, for example, which again require Ms. Blacksmith's cooperation, or at least the opportunity to question her."   (Docket 13 at pp. 1-2).

4

The government contends plaintiffs' claim that the indictment is an admission of liability is legally inaccurate.   The government argues "[t]he actions and interests of the federal prosecutor in a criminal case cannot be conflated with the interests of the United States in defending itself from tort liability in civil court pursuant to the Federal Tort Claims Act."   Id. at p. 2.   The government also asserts the plaintiffs' contention that the government will continue its civil discovery through the criminal prosecution is inaccurate because "the entire United States Attorney's Office for the District of South Dakota has been recused from any involvement with this civil case . . . . [and the Civil Division attorneys of the Department of Justice] will be in exactly the same position as any other civil defendant, and does not gain any special advantage, insight, or access to the criminal proceedings or to the individual being prosecuted."   Id. (emphasis omitted).

"Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution . . . [and] sometimes at the request of the defense . . . ."   Kordel, 397 U.S. at 12 n.27 (citations omitted). In Kordel, the defendants were simultaneously defendants in a civil action brought by the United States for the seizure of misbranded goods and defendants in a criminal case for violations of the Food, Drug and Cosmetic Act.   Id. at p. 3. The court observed that because of the "risk of self-incrimination" an "appropriate remedy would be a protective order under Rule 30(b), postponing civil discovery until termination of the criminal action."   Id. at p. 9.

5

In other cases where criminal prosecutions and civil actions are brought against the same individual defendant, courts have granted prosecution motions to stay the civil proceedings.   See United States v. Bridges, 86 F. Supp. 931, 932 (N.D. Cal. 1949) (criminal prosecution for defrauding the government and civil action for de-naturalization—civil action stayed); and Campbell v. Eastland, 307 F.2d 478, 488 (5th Cir. 1962) (taxpayer civil refund action and criminal failure to pay taxes prosecution—"It was an open invitation to taxpayers under criminal investigation to subvert the civil rules into a device for obtaining pre-trial discovery against the Government in criminal proceedings"—civil action should have been stayed).

"In evaluating whether a stay is appropriate, courts consider (1) the plaintiffs' interest in proceeding expeditiously with litigation and the potential prejudice to the plaintiffs of a delay; (2) the burden that the proceeding will cause the defendants; (3) the convenience of the court in the management of its cases and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the public's interests in the pending civil and criminal litigation." Kozlov v. Associated Wholesale Grocers, Inc., No. 4:10-CV-03211, 2011 WL 3320972, at *2 (D. Neb. Aug. 2, 2011).   "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." Id. (citation omitted).   "The Constitution does not ordinarily require a stay of civil proceedings during the pendency of a criminal case. . . . However, the strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter. . . . Under

6

such circumstances, denying a stay might undermine a defendant's Fifth Amendment privilege against self-incrimination."   Id. (internal citations, quotation marks and brackets omitted).

The government points to no reported case in which the government was the prosecutor as well as the defendant in a related civil case under circumstances similar to the facts before the court.   The court cannot find a single reported FTCA case in which the government indicted an agency employee for conduct underlying the FTCA claim.

The collision in this case was investigated by South Dakota Highway Patrol Trooper Rascher.   (Docket 12-2).   Trooper Rascher concluded the collision occurred because Ms. Blacksmith's eastbound vehicle failed to yield the right-of-way to Ms. Bald Eagle's westbound vehicle.   Id. at 10.   South Dakota Highway Patrol Trooper Ross conducted an accident reconstruction study the day of the collision.   (Docket 12-2).   Based on his investigation, Officer Ross concluded "Sophia Blacksmith's SUV collided with Colene Bald Eagle's minivan in the westbound lane of travel.   The crash occurred due to Sophia Blacksmith's negligent operation of the SUV and resulted in the serious injuries to Colene Bald Eagle and Audrey Yellow Hair and the fatal injuries to Theresa Martinez."   Id. at p. 8.   Bureau of Indian Affairs Investigator Mendez was the primary investigator on scene.   (Docket 12-2 at p. 3.)   Investigator Mendez took photographs as part of his investigation.   Id.   After the death of Ms. Martinez on August 5, 2015, FBI Agent Bennett took over as the lead federal investigator.   Id. at p. 5.   These federal agency investigators, South Dakota Highway Patrol Troopers and the

7

surviving plaintiffs, as well as a known additional witness, are readily available to the United States for pretrial discovery in this FTCA case.

The Federal Rules of Civil Procedure direct that the rules governing civil actions "should be construed, administered and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."   Fed. R. Civ. P. 1.   Plaintiffs alleged significant medical expenses, physical injuries or death and are entitled to proceed with discovery. The court notes the cases have been stalled for the past seven months pending resolution of the government's motion to stay.   Ms. Blacksmith's criminal prosecution has been continued eight times since the indictment was filed on February 23, 2016.   See United States v. Janis, CR. 16-50018.   (Dockets & 43).

A reasonable resolution of the motion to stay is to allow all discovery to proceed except for the deposition of Ms. Blacksmith.

**ORDER**

Based on the above analysis, it is

ORDERED that the government's motion to stay (Docket 8) is granted in part and denied in part.   All discovery shall proceed except for the deposition of Ms. Blacksmith pending resolution of her criminal case, CR. 16-50018.

Dated March 13, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE